# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| RICKIE ALLEN KIRCHNER, | Civil No. 12-1331 (JRT/SER) |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION** |
| v. | |
| CAROLYN W. COLVIN, *Commissioner of Social Security*, | |
| Defendant. | |

Neut L. Strandemo, **STRANDEMO SHERIDAN & DULAS, PA**, 1380 Corporate Center Curve, Suite 320, Eagan, MN 55121, for plaintiff.

Ana H. Voss, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for defendant.

The Commissioner of Social Security ("the Commissioner")[1] denied plaintiff Rickie Allen Kirchner's application for disability insurance benefits from October 2004 to February 26, 2009, under Title II of the Social Security Act ("the SSA"), 42 U.S.C. § 423. Kirchner applied for disability insurance benefits due to back injury, narcolepsy, sleep apnea, and diabetes. This is Kirchner's second appeal of an Administrative Law Judge ("ALJ") decision finding that Kirchner was not disabled within the meaning of the SSA. The case is now before the Court on the parties' cross-motions for summary judgment. In a Report and Recommendation ("R&R") filed on July 9, 2013, United

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013 and is automatically substituted as the defendant in this action. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

States Magistrate Judge Steven E. Rau recommended denying Kirchner's motion, granting the Commissioner's motion, and affirming the Commissioner's decision. Kirchner filed objections to the R&R, arguing that (1) due to conflicting evidence, it was incorrect for the Commissioner to conclude that his narcolepsy was controlled by medication; and (2) Kirchner met all of the requirements of a listed impairment for chronic venous insufficiency during the relevant period. This Court reviews the challenged portions of the R&R *de novo* under 28 U.S.C. § 636(b)(1)(C) and D. Minn. L.R. 72.2. Because the Court finds that substantial evidence on the record as a whole supported the conclusion that Kirchner's narcolepsy was controlled by medication and that Kirchner did not meet all the requirements of a listed impairment for chronic venous insufficiency, it will overrule Kirchner's objections and adopt the R&R.

## BACKGROUND

The facts of this case have been extensively summarized in the R&R (R&R at 2-12) and in previous orders, *see Kirchner v. Astrue*, Civ. No. 10-3263, 2011 WL 2555385 (D. Minn. June 2, 2011) *report and recommendation adopted in part, rejected in part,* Civ. No. 10-3263, 2011 WL 2555380 (D. Minn. June 28, 2011). (*See also* Admin. R. at 398-409, Aug. 13, 2012, Docket No. 5.) The Court will summarize only those facts necessary to understand Kirchner's objections to the R&R.

*Procedural Posture*

Kirchner's application for disability was originally denied on October 16, 2006 (Admin R. at 46-49), and reconsideration was denied on December 22, 2006 (*id.* 50-52).

Kirchner requested a hearing, and Administrative Law Judge David Gatto issued his decision on February 26, 2009. (*Id.* at 4-13.) The Appeals Council denied Kirchner's request for review. (*Id.* at 1-3.) Kirchner then sought review in this Court which remanded the action for further development of the record. *Kirchner*, 2011 WL 2555380, at *3. The Appeals Counsel vacated the Commissioner's decision and remanded the case for rehearing before ALJ Diane Townsend-Anderson. (Admin R. at 487.) On April 3, 2012, the ALJ again issued an unfavorable decision. (*Id.* at 395-414.) The second ALJ decision is the final decision of the Commissioner. (*Id.* at 396.) *See* 42 U.S.C. § 405(g).

*Narcolepsy*

It is undisputed that Kirchner suffers from narcolepsy. (*See, e.g.*, R&R at 7-12.) The Commissioner found that Kirchner's condition "has been treated with Adderall" and was "stable and controlled with medication." (Admin. R. at 405.) The R&R concluded that "[t]he record as a whole supports the ALJ's conclusion that Adderall controlled Kirchner's narcolepsy." (R&R at 18.)

During the hearing before the ALJ, the medical expert testified that "the narcolepsy has been an ongoing and significant problem," that Kirchner had "failed a number of typical medications," and that the "latest [medication] that was tried was the Adderall." (Admin. R. at 436.) When asked if the impairment from narcolepsy met or equaled any listing,[2] the medical expert stated, "No I don't think so." (*Id.*)

---

[2] A "listed impairment" is an impairment set forth in SSA regulations, and a claimant is considered disabled if their impairment "is listed" or is the medical equivalent of a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See* Part II.A, *infra*.

Kirchner's medical records contain multiple adjustments to Kirchner's narcolepsy medications. (*See, e.g.*, *id.* at 200-201 (adjusting dose of Adderall); *id.* at 207 (changing prescription from Adderall to modafenil).) In March 2005, Kirchner asked to have his Adderall treatment resumed. (*Id.* at 210.) His physician resumed treatment with Adderall, and "encouraged [him] . . . to call/return for any worsening or new symptoms." (*Id.* at 214-214.) On several occasions between September 2005 and July 2006, Kirchner's treating physician noted that Kirchner's narcolepsy was "doing well." (*Id.* at 222, 229, 238, 266.) In October 2006, Kirchner complained that Adderall was not controlling his narcolepsy, and his physician discovered that a mistake had been made in filling his prescription. (*Id.* at 260-62 (noting that Kirchner "is, unfortunately, on half the dose that he should be taking").) On several occasions between December 2006 and January 2008, Kirchner's treating physician again noted that Kirchner's narcolepsy was "doing well." (*Id.* at 293, 301, 327.)

*Venous Insufficiency*

It is also uncontested that Kirchner suffered from venous insufficiency, a condition where the veins inadequately circulate the blood, especially from the lower extremities. (*See, e.g.*, R&R at 5-7.) Kirchner was occasionally diagnosed with stasis dermatitis – a condition where blood pools in the veins, and blood and fluid leak out into the skin and other tissues – and ulcerations on his legs caused by the fluid accumulation. (*See id.*) There is no evidence in the record that Kirchner suffered from ulcerations that did not heal after treatment. (*See* R&R at 16-17 (summarizing evidence); Admin. R. at 404

("[T]here is no indication of recurrent or persistent ulceration that did not heal following at least three month of prescribed treatment.").)

In 2011, this Court remanded Kirchner's case for further development because of a determination that the record was "muddled" with respect to the persistence and severity of Kirchner's venous insufficiency. *Kirchner*, 2011 WL 2555380, at *3. Kirchner was invited to submit more evidence either before or at his hearing. (*See, e.g.*, Admin. R. at 492 ("If there is more evidence you want the ALJ to see, please give it to us as soon as possible . . . [or] you may bring it to the hearing."); *id.* at 502 (same).) Kirchner did not submit additional evidence of persistent ulcerations that did not heal following treatment. (*See generally* Admin. R. at 402, 404 (describing the record evidence of ulceration).)

## ANALYSIS

I.  **SUMMARY JUDGMENT STANDARD OF REVIEW**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party demonstrates that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. STANDARD OF REVIEW UNDER THE SOCIAL SECURITY ACT

### A. Definition of Disability

"The Social Security program provides benefits to people who are aged, blind, or who suffer from a physical or mental disability." *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992); *see also* 42 U.S.C. § 1382(a). The claimant has the burden of persuasion to prove that he or she is qualified for social security benefits. *See Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)) (describing the burdens of persuasion and production under the SSA)). To be eligible for benefits, an individual's impairments must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner follows a five-step sequential analysis to determine whether a claimant is disabled, considering (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant has sufficient residual functional capacity to return to his past work; and (5) whether the claimant can do other work existing in significant numbers in the regional or national economy. 20 C.F.R. §§ 404.1520(a)(4). A "listed impairment" is an impairment set out in SSA regulations. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). A claimant is considered disabled if he or she suffers from a listed impairment or a disorder that is the

medical equivalent of a listed impairment. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii), 404.1526, 416.926.

### B. Substantial Evidence on the Record as a Whole

The Court "will affirm a denial of benefits when the substantial evidence on the record as a whole supports the ALJ's decision. *Minor v. Astrue*, 574 F.3d 625, 627 (8th Cir. 2009); *see also* 42 U.S.C. § 405(g). Substantial evidence "is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Reweighing the evidence is not permitted. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). Therefore, even if a claimant's impairments might support a claim for disability insurance benefits on *de novo* review, the Court must affirm if there is substantial evidence to support the Commissioner's conclusion to the contrary. *See Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997). This Court cannot reverse the Commissioner's decision "merely because substantial evidence exists in the record that would have supported a contrary outcome." *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000). That is, after considering "both evidence that detracts from the ALJ's decision, as well as evidence that supports it," the Court should "not reverse simply because some evidence supports a conclusion other than that reached by the ALJ." *McDade v. Astrue*, – F.3d –, No. 12-3091, 2013 WL 3868115, at *1 (8th Cir. July 29, 2013).

## III.   KIRCHNER'S OBJECTIONS

Kirchner objects to the R&R's conclusion that the ALJ correctly determined Kirchner was not entitled to Social Security benefits. (Admin. R. 398-409.) Kirchner objects (1) that the ALJ incorrectly concluded that Aderall controlled Kirchner's narcolepsy and (2) that the ALJ should have found his disability met or equaled the listing for chronic venous insufficiency.

### A.   Narcolepsy

Kirchner objects to the determination that his narcolepsy was controlled by medication. Kirchner maintains that the conflicting evidence in the record required the ALJ to find that his narcolepsy was uncontrolled. But this Court must affirm a denial of benefits when "the substantial evidence on the record as a whole supports the ALJ's decision." *Minor*, 574 F.3d at 627. Although the Court recognizes that there were times when Kirchner's narcolepsy was not controlled by his medication, the majority of the evidence in the record suggests that the condition was well-controlled most of the time and supports the conclusion that Kirchner's symptoms did not reach the level of a disability.

"A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). Kirchner's treating physician repeatedly described Kirchner's narcolepsy as "doing well" during the contested period. *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003)

("The regulations provide that the longer and more frequent the contact between the treating source, the greater the weight will be given the opinion[.]")  In addition, the ALJ relied on the medical expert's testimony that while Kirchner's narcolepsy was "an ongoing and significant problem" it did not rise to the level of a disability.  (Admin. R. at 436.)

In sum, the Court finds that the substantial evidence on the record as a whole supports the ALJ's determination that Kirchner's narcolepsy was controlled.  The Court will therefore affirm the ALJ's determination that Kirchner's narcolepsy did not rise to the level of a disability.

### B.    Chronic Venous Insufficiency

Kirchner also objects to the R&R on the grounds that his diagnosis of stasis dermatitis and venous insufficiency with periods of ulcerations should be sufficient to find that he suffered from a listed impairment or a disorder that is the medical equivalent of a listed impairment.  *See* 20 C.F.R. § 404.1520(a)(4)(iii).  The SSA regulations define impairment because of chronic venous insufficiency as follows:

> Chronic venous insufficiency of a lower extremity with incompetency or obstruction of the deep venous system and one of the following:
>
> A.   Extensive brawny edema (see 4.00G3) involving at least two-thirds of the leg between the ankle and knee or the distal one-third of the lower extremity between the ankle and hip.
>
> OR
>
> B.   Superficial varicosities, stasis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment.

20 C.F.R. § 404, Subpart P, Appendix 1, Listing 4.11.  Kirchner argues that because "there is no evidence that [his ulcerations] did not exist for at least three months even after . . . treatment," the ALJ should have determined that his venous insufficiency met or equaled Listing 4.11.  (Pl.'s Objections to R&R at 3, July 23, 2013, Docket No. 15.)

Kirchner bears the burden of proving that his impairment met or equaled the listing for chronic venous insufficiency.  *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010).  "To meet a listing, an impairment must meet all of the listing's specified criteria." *Id.* (quoting *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004)).  Kirchner's assertion that his ulcerations **could have** existed for at least three months post-treatment is insufficient.  Kirchner did not show – despite ample opportunity to do so – that he suffered from ulcerations that did not heal following at least three months of prescribed treatment.  The Court, therefore, concludes that the ALJ did not err in finding that Kirchner did not suffer from ulcerations that met the requirements of Listing 4.11.

Kirchner objects that even if his impairments do not meet the impairments of Listing 4.11, the ALJ should have found that his impairments equaled those of Listing 4.11.  "To establish equivalency, a claimant 'must present medical findings equal in severity to **all** the criteria for the one most similar listed impairment.'" *Carlson*, 604 F.3d at 594 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)) (emphasis in original). Kirchner does not identify any medical evidence demonstrating that his impairments were equal in severity to the listed impairment.  In sum, the Court finds that substantial evidence on the record as a whole supports the ALJ's determination that Kirchner's disabilities did not meet or equal the requirements of Listing 4.11.

# CONCLUSION

After carefully considering Kirchner's objections to the R&R, the Court concludes that substantial evidence on the record as a whole supported the ALJ's determinations that Kirchner's narcolepsy was controlled by medication and that Kirchner did not meet all the requirements of a listed impairment for chronic venous insufficiency.  The Court will, therefore, affirm the ALJ's determination that Kirchner was not disabled as defined by the Social Security Act, will grant Colvin's motion for summary judgment, and will deny Kirchner's motion for summary judgment.

# ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** Rickie Allen Kirchner's objections [Docket No. 15] and **ADOPTS** the Report of and Recommendation of the Magistrate Judge dated July 9, 2013 [Docket No. 13].  Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment [Docket No. 9] is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment [Docket No. 6] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 18, 2013
at Minneapolis, Minnesota.

                                              s/ John R. Tunheim
                                              JOHN R. TUNHEIM
                                             United States District Judge